**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL 2785;
EVERARDO LUNA,
                    *Petitioners*,

                v.

FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION,
                    *Respondent*,

WILLIAM B. TRESCOTT,
                    *Intervenor*.

No. 18-73488

FMCSA No.
2018-0304

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS; INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
LOCAL 848; CHARLES "LUCKY"
LEPINS; JULIO GARCIA; JESUS
MALDONADO; JOSE PAZ,
                    *Petitioners*,

                v.

FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION; U.S. DEPARTMENT
OF TRANSPORTATION,
                    *Respondents.*

No. 19-70323

FMCSA No.
2018-0304

LABOR COMMISSIONER FOR THE
STATE OF CALIFORNIA,
                    *Petitioner*,

                v.

FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION,
                    *Respondent.*

No. 19-70329

FMCSA No.
2018-0304

DUY NAM LY; PHILLIP MORGAN,
*Petitioners*,

v.

FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION; U.S. DEPARTMENT
OF TRANSPORTATION,
                    *Respondents.*

No. 19-70413

FMCSA No.
2018-0304

OPINION

On Petition for Review of an Order of the
Federal Motor Carrier Safety Administration

Argued and Submitted November 16, 2020
San Francisco, California

Filed January 15, 2021

Before:  Jacqueline H. Nguyen, Andrew D. Hurwitz, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Bress

# SUMMARY[*]

## Federal Motor Carrier Safety Administration

The panel denied petitions for review of the Federal Motor Carrier Safety Administration ("FMCSA")'s determination that federal law preempted California's meal and rest break rules (the "MRB rules"), as applied to drivers of property-carrying commercial motor vehicles who are subject to the FMCSA's own rest break regulations.

The FMCSA only has the authority to review for preemption State laws and regulations "on commercial motor vehicle safety." 49 U.S.C. § 31141(c).

The panel held the agency's interpretation of the statute and the phrase "on commercial motor vehicle safety" merited deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), where the FMCSA acknowledged that it was departing from its 2008 interpretation of § 31141 and provided a reasoned analysis why it was doing so. The panel rejected petitioners' arguments that *Chevron* deference was inapplicable.

Turning to *Chevron*'s two-step framework, the panel held that even assuming petitioners identified a potential ambiguity in the statute, the agency's reading was a permissible one. The FMCSA reasonably determined that a State law "on commercial motor vehicle safety" was one that "imposes requirements in an area of regulations that is

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

already addressed by a regulation promulgated under [section] 31136." 83 Fed. Reg. at 67,473 (Dec. 28, 2018). The FMCSA's 2018 preemption decision also reasonably relied on Congress's stated interest in uniformity of regulation. The fact that California regulated meal and rest breaks in a variety of industries did not compel the conclusion that the MRB rules were not "on commercial motor vehicle safety." Finally, the panel held that the decision in *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014), did not foreclose the FMCSA's interpretation. The panel concluded that the FMCSA permissibly determined that California's MRB rules were State regulations "on commercial motor vehicle safety," so that they were within the agency's preemption authority.

The panel held that the FMCSA's determination that the MRB rules were "additional to or more stringent than" the federal regulation was reasonable and supported. 49 U.S.C. § 31141(c)(1). The FMCSA reached this conclusion because California required more breaks, more often and with less flexibility as to timing. The panel rejected petitioners' challenges to this determination.

The panel held that the FMCSA did not act arbitrarily or capriciously in finding that enforcement of the MRB rules "would cause an unreasonable burden on interstate commerce." 49 U.S.C. § 31141(c)(4)(C). Petitioners' counterarguments did not show that the agency acted arbitrarily or capriciously.

## COUNSEL

Deepak Gupta (argued), Jonathan E. Taylor, Gregory A. Beck, and Neil K. Sawhney, Gupta Wessler PLLC,

Washington, D.C.; Stan Saltzman, Marlin & Saltzman, Agoura Hills, California; for Petitioners Duy Nam Ly and Phillip Morgan.

Miles E. Locker (argued), Attorney, Division of Labor Standards Enforcement, Department of Industrial Relations, San Francisco, California; Xavier Becerra, Attorney General; Satoshi Yanai, Supervising Deputy Attorney General; Marisa Hernàndez-Stern, Deputy Attorney General; Office of the Attorney General, Los Angeles, California; for Petitioner Labor Commissioner for the State of California.

Julie Gutman Dickinson, Ira L. Gottlieb, Kiel B. Ireland, and Hector De Haro, Bush Gottlieb, Glendale, California, for Petitioner International Brotherhood of Teamsters, International Brotherhood of Teamsters, Local 848; Charles "Lucky" Lepins; Julio Garcia; Jesus Maldonado; and Jose Paz.

David A. Rosenfeld and Caitlin Gray, Weinberg Roger & Rosenfeld, Alameda, California, for Petitioners International Brotherhood of Teamsters, Local 2785, and Everardo Luna.

William B. Trescott, Bay City, Texas, pro se Intervenor.

Jennifer L. Utrecht (argued) and Mark B. Stern, Appellate Staff; Joseph H. Hunt, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; Steven G. Bradbury, General Counsel; Paul M. Geier, Assistant General Counsel; Charles E. Enloe, Trial Attorney; United States Department of Transportation, Washington, D.C.; Alan Hanson, Chief Counsel; Charles J. Fromm, Deputy Chief Counsel; Sue Lawless, Assistant Chief Counsel; Tracy M. White, Attorney-Advisor; Federal Motor

Carrier Safety Administration, Washington, D.C.; for Respondents.

Adam Berger, Schroeter Goldmark & Bender, Seattle, Washington; Daniel F. Johnson, Breskin Johnson & Townsend PLLC, Seattle, Washington; Aaron Kaufmann, Leonard Carder LLP, Oakland, California; Ashley Westby, National Employment Lawyers Association/The Employee Rights Advocacy Institute for Law & Policy, Washington, D.C.; for Amici Curiae State and National Employment Lawyers Associations.

Robert W. Ferguson, Attorney General; Anastasia Sandstrom, Seattle, Washington; for Amicus Curiae Washington State.

David R. Krause-Leemon, Beaudoin & Krause-Leemon LLP, Sherman Oaks, California; Aaron Parker, PODS Enterprises LLC, Clearwater, Florida; Carl Bentzel, Bentzel Strategies LLC, Bowie, Maryland; Bob Fatovic, Ryder Systems Inc., Miami, Florida; for Amici Curiae Specialized Carriers & Rigging Association, PODS Enterprises LLC, Ryder System Inc., and Western States Trucking Association.

Richard Pianka, ATA Litigation Center, Arlington, Virginia, for Amici Curiae American Trucking Associations Inc., California Trucking Association, Washington Trucking Associations, Intermodal Association of North America, and American Moving and Storage Association.

Adam Smedstad, Scopelitis Garvin Light Hanson & Feary P.C., Seattle, Washington; James H. Hanson, Scopelitis Garvin Light Hanson & Feary P.C., Indianapolis, Indiana; for Amici Curiae CRST Expedited Inc., FAF Inc., Heartland

Express Inc. of Iowa, John Christner Trucking LLC, Penske Logistics LLC, Penske Truck Leasing Co. L.P., Rail Delivery Services Inc., and U.S. Xpress Inc.

Malcolm A. Heinicke and Joseph D. Lee, Munger Tolles & Olson LLP, Los Angeles, California; Daryl Joseffer and Tara S. Morrissey, U.S. Chamber Litigation Center, Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States.

**OPINION**

BRESS, Circuit Judge:

The Federal Motor Carrier Safety Administration (FMCSA), an agency within the Department of Transportation, is tasked with issuing regulations on commercial motor vehicle safety. The FMCSA also has authority to determine that state laws on commercial motor vehicle safety are preempted, based on criteria Congress has specified. In this case, the FMCSA determined that federal law preempts California's meal and rest break rules, known as the "MRB rules," as applied to drivers of property-carrying commercial motor vehicles who are subject to the FMCSA's own rest break regulations. Compared to federal safety regulations, California's MRB rules generally require that employers allow commercial truck drivers to take more rest breaks, at greater frequency, and with less flexibility as to when breaks occur.

California's Labor Commissioner, certain labor organizations, and others now petition for review of the FMCSA's preemption determination. Because the agency's decision reflects a permissible interpretation of the Motor

Carrier Safety Act of 1984 and is not arbitrary or capricious, we deny the petitions for review.

## I

## A

Congress passed the Motor Carrier Safety Act of 1984 "to promote the safe operation of commercial motor vehicles, [and] to minimize dangers to the health of operators of commercial motor vehicles and other employees." Pub. L. No. 98-554, tit. II, 98 Stat. 2832, § 202 (originally codified at 49 U.S.C. app. 2501). Under the Act, the Secretary of Transportation "shall prescribe regulations on commercial motor vehicle safety" that contain "minimum safety standards for commercial motor vehicles." 49 U.S.C. § 31136(a). Among other things, federal regulations "shall ensure" that "the responsibilities imposed on operators of commercial motor vehicles do not impair their ability to operate the vehicles safely." *Id.* § 31136(a)(2).

The Act also gives the Secretary the express power to preempt State law: "A State may not enforce a State law or regulation on commercial motor vehicle safety that the Secretary of Transportation decides under this section may not be enforced." *Id.* § 31141(a). To carry out this duty, "[t]he Secretary shall review State laws and regulations on commercial motor vehicle safety." *Id.* § 31141(c)(1).

The statute provides a multi-step process that the Secretary must follow in conducting this review. The Secretary must first compare the State law or regulation at issue to a regulation prescribed by the Secretary under 49 U.S.C. § 31136 and decide whether the State law "has the same effect as," "is less stringent than," or "is additional to or more stringent than" the federal regulation. *Id.*

§ 31141(c)(1). If the Secretary decides a State law or regulation has the "same effect" as the federal regulation, "the State law or regulation may be enforced." *Id.* § 31141(c)(2). If a State law is less stringent than the federal regulation, "the State law or regulation may not be enforced." *Id.* § 31141(c)(3).

If the Secretary decides that a State law is "additional to or more stringent" than a federal regulation, another decision tree applies. At that point, the State law "may be enforced unless the Secretary also decides that — (A) the State law or regulation has no safety benefit; (B) the State law or regulation is incompatible with the regulation prescribed by the Secretary; or (C) enforcement of the State law or regulation would cause an unreasonable burden on interstate commerce." *Id.* § 31141(c)(4). When considering the burden on interstate commerce, "the Secretary may consider the effect on interstate commerce of implementation of that law or regulation with the implementation of all similar laws and regulations of other States." *Id.* § 31141(c)(5).

The Secretary has delegated its rulemaking and preemption authority to the Administrator of the FMCSA. 49 C.F.R. § 1.87(f).

B

Federal regulations impose limits on the driving time for commercial motor vehicle drivers. These are known as the hours-of-service regulations. Under federal law, a property-carrying commercial motor vehicle driver "may not drive without first taking 10 consecutive hours off duty,"

49 C.F.R. § 395.3(a)(1) (2018),[1] and "may not drive after the end of the 14-consecutive-hour period without first taking 10 consecutive hours off duty," *id.* § 395.3(a)(2). Within that 14-hour period, a driver may only drive 11 hours. *Id.* § 395.3(a)(3)(i). Federal regulations also impose weekly driving limits. *Id.* § 395.3(b) (prohibiting a driver from being on duty for more than 60 or 70 hours in seven or eight consecutive days, respectively).

In 2011, the FMCSA revised the federal hours-of-service regulations and adopted the rules on breaks for truck drivers that form the basis for the FMCSA's 2018 decision to preempt California's MRB rules. *See* Hours of Service of Drivers, 76 Fed. Reg. 81,134, 81,188 (Dec. 27, 2011) (codified at 49 C.F.R. § 395.3). Except for certain "short-haul" drivers, a property-carrying commercial motor vehicle driver working more than eight hours must take at least one 30-minute break during the first eight hours, although the driver has flexibility as to when the break occurs. 49 C.F.R. § 395.3(a)(3)(ii). That 30-minute break can be spent "off-duty" or in a "sleeper berth." *Id.*[2] The 2011 break requirement supplemented longstanding federal regulations

---

[1] The FMCSA revised 49 C.F.R. § 395.3 in 2019, and again in 2020. *See* Hours of Service of Drivers—Restart Provision, 84 Fed. Reg. 48,077 (Sept. 12, 2019); Hours of Service of Drivers, 85 Fed. Reg. 33,396 (June 1, 2020). In this opinion, we cite the 2018 version of the regulation, the rule in place at the time of the FMCSA's preemption determination. But the 2019 and 2020 changes do not affect the preemption analysis.

[2] Under the 2020 revisions to the regulation, the 30-minute break requirement now applies "only when a driver has driven (instead of having been on-duty) for a period of 8 hours without at least a 30-minute non-driving interruption." 85 Fed. Reg. at 33,396. Additionally, a driver can now satisfy the break requirement with "any non-driving period of 30 minutes, *i.e.*, on-duty, off-duty, or sleeper berth time." *Id.*; *see also* 49 C.F.R. § 395.3(a)(3)(ii) (2020).

prohibiting a driver from operating a commercial motor vehicle if too fatigued or unable to safely drive. 49 C.F.R. § 392.3. Employers may not coerce drivers to violate this rule or the hours-of-service rules. *Id.* § 390.6. The federal regulations do not require other breaks.

The California rules are different. California's rules are contained in wage orders issued by the State's Industrial Welfare Commission (IWC), which is tasked with protecting workers' "health, safety, and welfare." *Martinez v. Combs*, 231 P.3d 259, 271 (Cal. 2010) (quoting Cal. Lab. Code § 1173). To that end, the IWC has issued eighteen wage orders, mostly on an industry-wide or occupation-wide basis. Cal. Code Regs. tit. 8, §§ 11010–11170; *Martinez*, 231 P.3d at 272–73. These orders cover all employees in California unless they are specifically exempted. *See Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513, 521 n.1 (Cal. 2012); *Martinez*, 231 P.3d at 273 & n.24; Cal. Code Regs. tit. 8, § 11170(1)(A). Seventeen IWC orders contain meal period requirements and sixteen contain rest period requirements. *See* Cal. Code Regs. tit. 8, §§ 11010–11170.

Wage Order 9-2001 applies to "all persons employed in the transportation industry," which necessarily includes property-carrying commercial truck drivers. *Id.* § 11090(1). Under the order, an employee working more than five hours a day is entitled to a "meal period of not less than 30 minutes." *Id.* § 11090(11)(A). If, however, "a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee." *Id.* An employee is entitled to "a second meal period of not less than 30 minutes" when working more than 10 hours in a day. *Id.* § 11090(11)(B). The employee and employer can only agree to waive the second meal break if the employee does not

work more than 12 hours in a day and did not waive the first break. *Id.*; *see also* Cal. Lab. Code § 512(a) (imposing these same meal break rules for all employees unless otherwise exempted).

The California Wage Order also entitles transportation industry employees to 10-minute rest breaks for every four hours worked throughout the day. Cal. Code Regs. tit. 8, § 11090(12)(A). These rest breaks "insofar as practicable shall be in the middle of each work period." *Id.* California's Labor Commissioner can grant an employer an exemption from the rest break requirement if it "would not materially affect the welfare or comfort of employees and would work an undue hardship on the employer." *Id.* § 11090(17).

Under California law, an employer who fails to provide a meal or rest break must "pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c); *see also* Cal. Code Regs. tit. 8, § 11090(11)(D), (12)(B). Employees can bring a claim seeking such payment under California's Private Attorneys General Act of 2004 (PAGA), Cal. Lab. Code §§ 2698–2699.6. *See* Cal. Lab. Code § 2699.3. Employees can also seek civil penalties on behalf of themselves and other employees; the State receives a portion of any award. *Id.* § 2699.

## C

In response to a petition from a group of motor carriers, the FMCSA in 2008 declined to preempt California's MRB rules as applied to commercial motor vehicle drivers subject to FMCSA's hours-of-service regulations. *See* Petition for Preemption of California Regulations on Meal Breaks and Rest Breaks for Commercial Motor Vehicle Drivers;

Rejection for Failure to Meet Threshold Requirement, 73 Fed. Reg. 79,204, 79,204–06 (Dec. 24, 2008). The FMCSA ruled that it lacked the authority to preempt because the MRB rules applied far beyond the trucking industry and were thus not "on commercial motor vehicle safety." *Id.* at 79,205–06.

In 2018, two industry groups, the American Trucking Association and the Specialized Carriers and Rigging Association, asked the FMCSA to revisit its 2008 "no preemption" determination. After seeking public comment on the preemption question, *see* California Meal and Rest Break Rules, 83 Fed. Reg. 50,142 (Oct. 4, 2018), the FMCSA declared California's MRB rules preempted as applied to operators of property-carrying motor vehicles subject to the federal hours-of-service regulations.[3] *See* California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers, 83 Fed. Reg. 67,470 (Dec. 28, 2018). The FMCSA determined that the MRB rules were in fact "on commercial motor vehicle safety" and could not be enforced under 49 U.S.C. § 31141(c). 83 Fed. Reg. 67,472–80.

California's Labor Commissioner and three other sets of petitioners (labor organizations and affected individuals) filed timely petitions for review. *See* 49 U.S.C. § 31141(f)(1). We have jurisdiction to review these consolidated petitions under 49 U.S.C. § 31141(f)(2). Although the petitioners place different weight on different points, for ease of reference we generally refer to them collectively as "petitioners."

---

[3] The preemption determination does not apply to drivers of passenger-carrying commercial motor vehicles. 83 Fed. Reg. at 67,470 n.1.

II

We review the FMCSA's preemption determination under the Administrative Procedure Act (APA) framework for judicial review.  The question is therefore whether the FMCSA's preemption decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."    5 U.S.C. § 706(2)(A), (C).  Petitioners argue both that the FMCSA lacks the statutory authority to preempt the MRB rules, and, to the extent it could do so, that the agency's preemption decision was arbitrary and capricious.  Based on our careful review of the FMCSA's decision and after applying the deference that is due the agency, we conclude that petitioners' challenges lack merit.

A

The FMCSA only has authority to review for preemption State laws and regulations "on commercial motor vehicle safety." 49 U.S.C. § 31141(c).  The initial question we must address is the meaning of this phrase.

In its preemption determination, the FMCSA concluded that a State law or regulation is "on commercial motor vehicle safety" if it "imposes requirements in an area of regulation that is already addressed by a regulation promulgated under [section] 31136.'"    83 Fed. Reg. at 67,473.  Under this interpretation, the MRB rules are "on commercial motor vehicle safety" because federal regulations promulgated under section 31136 govern breaks for commercial motor vehicle drivers.  *Id.*

The petitioners argue that laws "on commercial motor vehicle safety" are those *specifically directed* at commercial

motor vehicle safety.  They maintain that the MRB rules do not qualify because they apply to many workers other than truck drivers and regulate employee health and wellbeing generally.  The FMCSA counters that at the very least, the statute is ambiguous and that the agency's interpretation merits deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

We reject, at the outset, petitioners' arguments that *Chevron* deference is inapplicable.  An agency usually receives *Chevron* deference in its construction of an ambiguous statute that it administers. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000). Relying mainly on *Wyeth v. Levine*, 555 U.S. 555 (2009), petitioners argue that the FMCSA is entitled to no deference when it comes to preemption determinations.  But *Wyeth* does not apply here.

In *Wyeth*, the Supreme Court declined to defer to the FDA's preemption decision because "Congress ha[d] not authorized the FDA to pre-empt state law directly." 555 U.S. at 576.  That is not the case here because Congress in 49 U.S.C. § 31141(a) expressly gave the agency authority to preempt "State law[s] and regulation[s] on commercial motor vehicle safety" when the agency "decides" certain criteria are met.  Because the agency's power to preempt is part of the overall power Congress expressly delegated to it, *Wyeth* does not diminish the deference due the agency's interpretation of a statute it is charged with administering. *See Wyeth*, 555 U.S. at 576–77 (explaining that "agencies have no special authority to pronounce on pre-emption *absent delegation by Congress*" (emphasis added)); *id.* at 576 & n.9 (contrasting the FDA's lack of express preemptive power with statutes that gave agencies the power to preempt state laws); *Durnford v. MusclePharm Corp.*,

907 F.3d 595, 601 n.6 (9th Cir. 2018) (agencies do not receive *Chevron* deference in interpreting a preemption provision "[i]n the absence of a specific congressional delegation of authority to interpret the scope of preemption"); *see also City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) (rejecting "[t]he misconception that there are, for *Chevron* purposes, separate 'jurisdictional' questions on which no deference is due").

The petitioners also argue that the FMCSA should receive no deference because the 2018 preemption determination reversed the agency's 2008 determination that it lacked the power to preempt California's MRB rules. But we have explained that "[a]n initial agency interpretation is not instantly carved in stone" because "the agency . . . must consider varying interpretations and the wisdom of its policy on a continuing basis." *Resident Councils of Wash. v. Leavitt*, 500 F.3d 1025, 1036 (9th Cir. 2007) (quoting *Chevron*, 467 U.S. at 863–64). As a result, "an agency's 'new' position is entitled to deference 'so long as the agency acknowledges and explains the departure from its prior views.'" *Id.* (quoting *Seldovia Native Ass'n v. Lujan*, 904 F.2d 1335, 1346 (9th Cir. 1990)); *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981, 1001 (2005) (explaining that an agency "is free within the limits of reasoned interpretation to change course if it adequately justifies the change" and that "[a]gency inconsistency is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework"); *Rust v. Sullivan*, 500 U.S. 173, 186 (1991) (explaining that the Supreme Court "has rejected the argument that an agency's interpretation is not entitled to deference because it represents a sharp break with prior interpretations of the statute in question" (quotations omitted)).

These principles of administrative law recognize that democratic processes, improved understandings, or changed circumstances may prompt agencies to alter their own views over time. Petitioners have not articulated how a rule that precludes deference anytime an agency changes its mind could be justified under the basic delegation theory animating *Chevron*. *See Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 742 (1996) ("[C]hange is not invalidating, since the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency."). Nor have petitioners explained why the agency would be required to hew to a statutory interpretation that it no longer believes is correct. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993) ("The Secretary is not estopped from changing a view she believes to have been grounded upon a mistaken legal interpretation.").

In this case, the FMCSA acknowledged that it was departing from its 2008 interpretation of § 31141 and provided a reasoned analysis for why it was doing so. *See Resident Councils of Wash.*, 500 F.3d at 1036. The FMCSA explained that its earlier 2008 interpretation "was unnecessarily restrictive" because "[t]here is nothing in the statutory language or legislative history that supports" its prior decision limiting the preemption provision to State laws specifically directed at commercial motor vehicle safety. 83 Fed. Reg. at 67,473. The FMCSA also explained how circumstances had changed since 2008, because the agency in 2011 had enacted specific break regulations for commercial motor vehicle drivers. *Id.* at 67,474. These are the types of explanations that an agency can offer to ensure that *Chevron* deference is applied to its new interpretation. *See, e.g.*, *Brand X Internet Servs.*, 545 U.S. at 981, 1001.

Turning to *Chevron*'s familiar two-step framework, we first ask whether the statutory text is unambiguous. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. But if the statute is ambiguous, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. Here, even assuming petitioners have identified a potential ambiguity in the statute, we hold that the agency's reading is a permissible one.

Once again, the operative statutory language is the phrase "on commercial motor vehicle safety." 49 U.S.C. § 31141(a), (c). The FMCSA reasonably determined that a State law "on commercial motor vehicle safety" is one that "imposes requirements in an area of regulation that is already addressed by a regulation promulgated under [section] 31136." 83 Fed. Reg. at 67,473. Section 31136(a) allows the FMCSA to issue regulations "on commercial motor vehicle safety." Given the parallel language used in sections 31136(a) and 31141(a), when the agency has issued a regulation under its section 31136(a) authority, it is reasonable for the agency to interpret section 31141(a) analogously to allow preemption of State regulation in that same area.

The FMCSA's 2018 preemption decision also reasonably relied on Congress's stated interest in uniformity of regulation. *See* 83 Fed. Reg. at 67,473 (explaining that the 1984 Act "clearly expresses Congress's intent that 'there be as much uniformity as practicable whenever a Federal standard and a State requirement cover the same subject matter'") (quoting S. Rep. No. 98-424, at 14 (1984)); *see also* Motor Carrier Safety Act of 1984 § 203(2), 98 Stat. at

2832 (originally codified at 49 U.S.C. app. 2502) (finding safety benefits from "improved, more uniform commercial motor vehicle safety measures"). The FMCSA could reasonably conclude that a State law disrupts regulatory uniformity even when the law was not specifically directed at commercial vehicle motor safety because a broader State law could still cover the same subject matter as FMCSA regulations.

Petitioners argue that the word "on" must be read narrowly, so that the FMCSA can only preempt State laws "specifically directed" at commercial motor vehicle safety. Petitioners thus maintain that the MRB rules cannot be "on commercial motor vehicle safety" because they also regulate working conditions and ensure employee health and wellbeing. But that the MRB rules may serve these other purposes cannot insulate them from preemption when, as here, the rules also promote commercial motor vehicle safety. *See, e.g.*, 83 Fed. Reg. at 67,474 ("[I]n her comments on this petition, the California Labor Commissioner acknowledged that the MRB Rules improve driver and public safety stating, 'It is beyond doubt that California's meal and rest period requirements promote driver and public safety.'").

Nor does the fact that California regulates meal and rest breaks in a variety of industries compel the conclusion that the MRB rules are not "on commercial motor vehicle safety." If California had specifically regulated the meal and break times of commercial motor vehicle drivers and no one else, that would of course be a regulation "on" commercial motor vehicle safety. But those drivers remain subject to the same regulations when California also applies its break laws to other types of workers. Because California's MRB rules apply to drivers whose breaks are the subject of federal

regulation "on commercial motor vehicle safety," the MRB rules can be described as laws "on" commercial motor vehicle safety as well. Or at least the FMCSA could permissibly conclude that was so. *See Brand X Internet Servs.*, 545 U.S. at 989 ("[W]here a statute's plain terms admit of two or more reasonable ordinary usages, the [agency's] choice of one of them is entitled to deference.").

Petitioners nevertheless suggest that the word "on" is inherently narrow and at least narrower than the phrase "pertaining to," which was the Motor Carrier Safety Act's original language. *See* §§ 206–08, 98 Stat. at 2832–37. But we conclude that the statute does not unambiguously require petitioners' reading. *See Chevron*, 467 U.S. at 842–43. The word "on" is not inevitably as narrow as petitioners claim. *See On, prep.*, Oxford English Dictionary (2d ed. 1989) ("22. a. In regard to, in reference to, with respect to, as to."), https://www.oed.com/oed2/00163302.

The history of the 1994 revision also counsels against petitioners' more confined reading. Congress changed "pertaining to" to "on" or "related to" in several provisions in a 1994 recodification. *See* Pub. L. No. 103-272, sec. 1(d), § 31141(a)–(c), 108 Stat. 745, 1008–09 (1994). But Congress made clear that these changes "may not be construed as making a substantive change in the laws replaced." *Id.* sec. 6(a), 108 Stat. at 1378. And "no changes in law or policy are to be presumed from changes of language" in a statutory recodification "unless an intent to make such changes is clearly expressed." *Finley v. United States*, 490 U.S. 545, 554 (1989) (quotations omitted), *superseded by statute on other grounds*, *as recognized in Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). Given the circumstances of the 1994 amendments and the ambiguity that otherwise exists between "on" and

"pertaining to," petitioners have not shown that the 1994 recodification compels their preferred interpretation of the statutory text.

Given the language in the statute, the FMCSA could reasonably reject petitioners' charge that its reading of "on" would give the FMCSA unlimited power to preempt any law that merely "affects" commercial motor vehicle safety in some tangential way.  83 Fed. Reg. at 67,473.  Petitioners argue, for example, that the agency's reading of "on" would allow the FMCSA to preempt state laws allowing for pregnancy disability leave or leave to serve on a jury.  These concerns, however, are overstated.  The agency has not ushered in an era of unbounded FMCSA authority through its interpretation of the preposition "on."

The agency's interpretation is more circumscribed than petitioners suggest: MRB rules are regulations "on commercial motor vehicle safety" because they are within FMCSA's specific regulatory domain and the subject of existing federal regulation in the very same area.  The agency has issued particularized regulations that govern break times for drivers of property-carrying commercial motor vehicles, and there is no dispute those are regulations "on commercial motor vehicle safety."  There is thus no reason to believe that the agency's reading of "on" would allow it to issue regulations and preempt State laws in areas outside its delegated authority.  Indeed, the agency expressly disclaims that power.  *See* 83 Fed. Reg. at 67,473 ("This determination does not rely on a broad interpretation of section 31141 as applicable to any State law that 'affects' [commercial motor vehicle] safety.").  The FMCSA's interpretation of "on" does not lead to such far-reaching authority, either.  While petitioners stress that the MRB rules apply across many industries, the FMCSA has not

preempted those state laws generally, but only as applied to drivers of property-carrying commercial motor vehicles subject to federal regulation.

Nor is the FMCSA's interpretation rendered unreasonable in the face of a claimed presumption against preemption. The Supreme Court has instructed that the "inquiry into the scope of a [federal] statute's pre-emptive effect is guided by the rule that the purpose of Congress is the ultimate touchstone in every pre-emption case." *Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288, 1297 (2016) (alteration in original) (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)). When, as here, "the statute 'contains an express pre-emption clause,' we do not invoke any presumption against pre-emption but instead 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (quoting *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011)); *see also Atay v. County of Maui*, 842 F.3d 688, 699 (9th Cir. 2016) (same).

Petitioners maintain that the MRB rules are part of California's traditional "police power" and that a presumption against preemption should therefore still apply. But a state's traditional regulation in an area is not, standing alone, sufficient to defeat preemption in the face of an express preemption clause. As we have explained in the context of the MRB rules in particular, "[w]age and hour laws constitute areas of traditional state regulation, although that fact alone does not 'immunize' state employment laws from preemption if Congress in fact contemplated their preemption." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 643 (9th Cir. 2014). In this case, the issue is not the general preemptive force of 49 U.S.C. § 31141(a), but the agency's

decision to exercise its express statutory preemptive powers. Petitioners have not explained how a case-dispositive presumption against preemption could override an agency's textually permissible interpretation of an express preemption provision it is charged with administering.

Finally, our decision in *Dilts*, 769 F.3d 637, does not foreclose the FMCSA's interpretation. *Dilts* concerned the scope of an express preemption provision in the Federal Aviation Administration Authorization Act of 1994 (FAAAA) that prohibits state laws that are "related to" prices, routes, or services of commercial motor vehicles. 49 U.S.C. § 14501(c)(1). Although *Dilts* held that this provision did not preempt California's MRB rules, *see* 769 F.3d at 647–50, we did not interpret the preemption provision at issue here. *Dilts* therefore did not address whether the MRB rules could fall within section 31141's scope. Indeed, the plaintiffs in *Dilts* worked exclusively in California as short-haul drivers and were thus not even "covered by . . . federal hours-of-service regulations." *Id.* at 648 n.2.

Similarly, although the United States filed an amicus brief in *Dilts* adhering to its 2008 determination that the MRB rules were not preempted under 49 U.S.C. § 31141, the government also noted that the agency had "broad discretion" in interpreting that statute. *See* Brief for the United States as Amicus Curiae, *Dilts*, 769 F.3d 637 (No. 12-55705), 2014 WL 809150, at *26–27. The *Dilts* amicus brief did not maintain that the FMCSA's 2008 interpretation was unambiguously compelled. Instead, it insisted the interpretation deserved *Chevron* deference. *Id.* Thus, neither our decision in *Dilts* nor the United States' position in that case creates an impediment to the FMCSA's current preemption determination.

We therefore hold that the FMCSA permissibly determined that California's MRB rules were State regulations "on commercial motor vehicle safety," so that they were within the agency's preemption authority. 49 U.S.C. § 31141(a).

B

The FMCSA next was required to determine whether the MRB rules were "less stringent than," had the "same effect" as, or were "additional to or more stringent than" the federal regulations. 49 U.S.C. § 31141(c)(1). The FMCSA found the third option correct. *See* 83 Fed. Reg. at 67,474–75. Petitioners argue this determination was arbitrary and capricious. Our review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Nat'l Mining Ass'n v. Zinke*, 877 F.3d 845, 866 (9th Cir. 2017) (quotations omitted). We hold that the FMCSA's determination on this point was reasonable and supported.

The FMCSA concluded that the MRB rules were "additional to or more stringent than" federal regulations because California requires more breaks, more often, and with less flexibility as to timing. 83 Fed. Reg. at 67,474–75. Federal regulations generally require that a driver working more than eight hours must take a 30-minute break during the first eight hours, while providing flexibility as to when the break takes place. *See* 49 C.F.R. § 395.3(a)(3)(ii). By contrast, California generally requires a 30-minute meal break within the first five hours of work, another 30-minute meal break over the next five hours, and additional 10-minute rest periods every four hours. Cal. Lab. Code § 512(a); Cal. Code Regs. tit. 8, § 11090(11)(A)–(B), (12). The 10-minute rest breaks "insofar as practicable shall be in the middle of each work period." Cal. Code Regs. tit. 8,

§ 11090(12).    The differences between California and federal law thus support the agency's determination that the MRB rules impose requirements "additional to or more stringent than" federal law.   49 U.S.C. § 31141(c)(1)(C). Indeed, California acknowledges that its rules result in "more time off[] during the workday."

Petitioners make two main arguments in response.  *First*, petitioners argue that California law has some flexibility in its design.   For example, employees may agree to waive certain meal breaks.   Cal. Lab. Code § 512(a); Cal. Code Regs. tit. 8, § 11090(11)(A)–(B).   Employers can also seek exemptions from the rest break requirements from California's Labor Commissioner.   Cal. Code Regs. tit. 8, § 11090(17).   And the California Supreme Court has noted that rest breaks may take place at a time other than the middle of the work period "where practical considerations render [that] infeasible."   *Brinker Rest. Corp.*, 273 P.3d at 530.

Nonetheless, as compared to the federal regulations, the California rules still require more breaks, with greater frequency, and with lesser ability to adjust the break time. *See* 83 Fed. Reg. at 67,474–75.  The degree of flexibility that California law affords thus does not undermine the agency's conclusion that California's MRB rules are still "additional to or more stringent than" federal requirements.

*Second*, petitioners point out that, rather than provide the meal or rest breaks, an employer can "pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c); Cal. Code Regs. tit. 8, § 11090(11)(D), (12)(B).  Petitioners thus argue that California law does not really impose additional or more stringent requirements than federal law

because an employer may simply pay to avoid complying with the MRB rules. It is not apparent how petitioners' characterization changes the analysis because employers under California law would still either need to provide breaks or make break-related payments that federal law does not require. *See* 83 Fed. Reg. at 67,475 n.9. Regardless, the agency's decision was consistent with California law.

As the FMCSA noted, California treats its MRB rules as requirements, providing that employers "shall not" deny the required breaks while creating a monetary remedy for their "fail[ure]" to do so. Cal. Lab. Code § 226.7(b), (c); *see also* 83 Fed. Reg. at 67,475. As California acknowledged at oral argument, an employer's failure to provide the required breaks is also a misdemeanor under California law. *See* Cal. Lab. Code § 1199; *Ward v. United Airlines, Inc.*, 466 P.3d 309, 315 (Cal. 2020) (noting that California Labor Code § 1199(c) "mak[es] violation of an IWC wage order a misdemeanor"). Although California represents that these misdemeanor prosecutions have rarely, if ever, occurred, the apparent availability of this remedy underscores that failure to comply with the break requirements is a legal violation.

And that is how the California Supreme Court has treated them, in a series of decisions on which the FMCSA relied. In *Kirby v. Immoos Fire Protection, Inc.*, 274 P.3d 1160 (Cal. 2012), that court explained that "Section 226.7 is not aimed at protecting or providing employees' wages. Instead, the statute is primarily concerned with ensuring the health and welfare of employees by requiring that employers provide meal and rest periods as mandated by the IWC." *Id.* at 1167. As a result, "the legal violation is nonprovision of meal or rest breaks." *Id.* at 1168. The court was clear: "section 226.7 does not give employers a lawful choice between providing *either* meal and rest breaks *or* an

additional hour of pay" because "[t]he failure to provide required meal and rest breaks is what triggers a violation of section 226.7." *Id.* at 1168.

Petitioners cite *Augustus v. ABM Security Services, Inc.*, 385 P.3d 823 (Cal. 2016), and *Murphy v. Kenneth Cole Productions, Inc.*, 155 P.3d 284 (Cal. 2007). But neither case suggests that the FMCSA's decision was arbitrary or capricious. In *Augustus*, the California Supreme Court noted that if employers "find it especially burdensome to relieve their employees of all duties during rest periods," they have the "option[]" to "pay the premium pay set forth in . . . section 226.7." 385 P.3d at 834. But *Augustus* cautioned that the payment option does not "impl[y] that employers may pervasively interrupt scheduled rest periods, for any conceivable reason—or no reason at all." *Id.* at 834 n.14. And *Augustus* clarified that payments instead of breaks "should be the exception rather than the rule, to be used when the employer—because of irregular or unexpected circumstances such as emergencies—has to summon an employee back to work." *Id.*

*Murphy* likewise does not undermine the FMCSA's reasoning. In *Murphy*, a pre-*Kirby* decision, the California Supreme Court held that claims for additional wages for violating the MRB rules were governed by the statute of limitations period for wage claims, not the shorter limitations period for penalties. 155 P.3d at 297. But this does not change the overall characterization of the MRB rules as requiring meal and rest breaks, so that failing to provide them is a "legal violation." *Kirby*, 274 P.3d at 1167. As *Kirby* explained in reconciling *Murphy*, "[t]o say that a section 226.7 remedy is a wage . . . is not to say that the *legal violation* triggering the remedy is nonpayment of wages." *Id.* at 1168. The FMCSA in its preemption determination

addressed petitioners' reliance on *Murphy* and explained how (per the California Supreme Court) *Murphy* was consistent with *Kirby*.    83 Fed. Reg. at 67,475.    That reasoning was not arbitrary or capricious.

In short, the FMCSA faithfully interpreted California law in finding that California's rules were "additional to or more stringent than" federal regulations.    49 U.S.C. § 31141(c)(1)(C).

C

At this point in its analysis, the FMCSA could preempt the MRB rules as applied to drivers of property-carrying commercial vehicles if it decided that the State law (1) "has no safety benefit" or (2) "is incompatible with the regulation prescribed by the Secretary," or (3) that "enforcement of the State law or regulation would cause an unreasonable burden on interstate commerce."    *Id.* § 31141(c)(4)(A)–(C).    The agency found all three criteria met.    83 Fed. Reg. at 67,475–80.    Petitioners argue that each finding was arbitrary and capricious.

Any one of the three enumerated grounds is enough to justify a preemption determination.    *See* 49 U.S.C. § 31141(c)(4).    We do not address the agency's first two findings because we hold that the agency did not act arbitrarily or capriciously in finding that enforcement of the MRB rules "would cause an unreasonable burden on interstate commerce."    *Id.* § 31141(c)(4)(C).

In reaching that conclusion, the FMCSA found that the MRB rules "impose significant and substantial costs stemming from decreased productivity and administrative burden."    83 Fed. Reg. at 67,479.    The administrative record supports these conclusions.    As to decreased productivity,

the FMCSA could reasonably determine that the MRB rules cause an unreasonable burden on interstate commerce because they "decrease each driver's available duty hours." *Id.* The FMCSA examined the federal and California schemes and explained how the MRB rules required drivers to spend more time on breaks. *See, e.g.*, *id.* at 67,478 & n.12.

The FMCSA also relied on public comments demonstrating how the MRB rules' more demanding break requirements affected productivity and, in turn, the efficient operation of an interstate delivery system. *Id.* at 67,479. For example, FedEx Corporation explained that "to take off-duty breaks, the 'drivers must slow down, exit the roadway, find a safe and suitable location to park and secure their vehicles, and then exit the vehicle' and that the company has to build additional time, up to 90 minutes, into the drivers' routes." *Id.* Other public comments and studies showed the financial impact of the lost productivity and its effect on distribution systems. *Id.* These costs were exacerbated by "California's share of the national economy" and the fact that "California's three major container ports carry approximately 50% of the nation's total container cargo volume." *Id.* at 67,478–79. The evidence in the administrative record thus supports the FMCSA's determination that lost driving time leads to lost productivity and burdens interstate commerce.

The FMCSA also reasonably relied on "the administrative burden associated with complying with the MRB rules." *Id.* at 67,479. This burden included higher compliance costs, increases in administrative and operations headcount, changes to delivery and logistics programs, revision of routes, and changes to compensation plans. *Id.* The agency also properly considered "the effect on interstate commerce of implementation of [the MRB rules] with the

implementation of all similar laws and regulations of other States."  49 U.S.C. § 31141(c)(5).  The FMCSA noted that twenty States had their own meal and rest break rules, and this "patchwork of requirements," increased the burden on interstate commerce.  83 Fed. Reg. at 67,479–80.  Among other things, companies had to create "elaborate schedules" to navigate the different State requirements.  *Id.*  Taken together, all these findings support the agency's determination that the MRB rules "cause an unreasonable burden on interstate commerce."  49 U.S.C. 31141(c)(4)(C).

Petitioners' counterarguments do not show that the agency acted arbitrarily or capriciously.  Contrary to petitioners' assertion, the agency did weigh costs and benefits in concluding that the MRB rules posed an unreasonable burden on interstate commerce.  The FMCSA "acknowledge[d] that the State of California has a legitimate interest in promoting driver and public safety."  83 Fed. Reg. at 67,479.  It explained, however, that "the Federal [hour of service] rules and the provisions in the [federal motor carrier safety regulations] relating to fatigued driving and employer coercion serve to promote that interest."  *Id.*  Properly understood, the FMCSA simply determined that, in its view, federal regulations adequately and more appropriately balanced the competing interests between safety and economic burden.  *Id.*; *see also id.* at 67,476 (explaining how federal regulations "balanc[e] the need to prevent excessive hours of continuous driving with a driver's need for flexibility in scheduling a rest break").  Petitioners have not shown that conclusion was unreasonable.  Nor was the FMCSA required to conduct its preemption assessment in a manner identical to a dormant Commerce Clause undue

burden analysis.  *See Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).**[4]**

We likewise reject petitioners' assertion that the FMCSA's cumulative burden analysis was flawed because industry must already comply with varying State laws in other areas, such as environmental and anti-discrimination laws.  In petitioners' view, the "marginal cost" of complying with "one more set" of varying State laws is "negligible." But this argument does not show that the FMCSA's preemption determination, made under a statute which gives it the express authority to do so, was arbitrary or capricious.

As the FMCSA noted, many of the state laws that petitioners cite "are well outside the scope of the Agency's statutory authority."  83 Fed. Reg. at 67,480.  And because motor carriers will always be subject to varying state laws to some extent, petitioners' argument, if accepted, would significantly limit the FMCSA's ability to determine that divergent state laws "on commercial motor vehicle safety" pose an unreasonable burden on interstate commerce. Nothing in the statute suggests the agency's preemptive powers are so constrained.  Indeed, the statute is directly to the contrary: it allows the agency to consider the cumulative "effect on interstate commerce of implementation" of the state law in question "with the implementation of all similar laws and regulations of other States."    49 U.S.C. § 31141(c)(5).  In any event, the FMCSA here had more than

---

**[4]** One petitioner argues that the FMCSA did not consider the non-safety benefits of the MRB rules, such as workplace dignity or higher wages for drivers.  But there is no indication that the statute requires the FMCSA to consider such factors, which are likely outside its expertise.

sufficient basis to conclude that the MRB rules burden interstate commerce in a way that is not merely "negligible."

Finally, petitioners err in claiming that two of our decisions invalidate the FMCSA's preemption determination. They do not. In *Sullivan v. Oracle Corp.*, 662 F.3d 1265 (9th Cir. 2011), we held that California's overtime rules did not violate the dormant Commerce Clause because "California applies its Labor Code equally to work performed in California, whether that work is performed by California residents or by out-of-state residents." *Id.* at 1271. That holding has no apparent relevance to this case.

Nor did we resolve the cumulative burden question as a matter of law when we stated in *Dilts* that "applying California's meal and rest break laws to motor carriers would not contribute to an impermissible 'patchwork' of state-specific laws, defeating Congress' deregulatory objectives." 769 F.3d at 647. As we have noted, *Dilts* did not concern the statute at issue here. And the above statement turned on *Dilts*' determination that the meal and rest break laws were not "related to" prices, routes, and services under the FAAAA's preemption provision. *Id.* Like *Sullivan*, *Dilts* does not foreclose the agency's preemption determination.[5]

---

[5] IBT Local 2785 briefly argues that the FMCSA also flouted numerous statutes and executive orders, but fails to explain how the agency violated these various laws. We do not address these arguments, as IBT Local 2785 "failed to argue" these issues "with any specificity in [its] briefing." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

Petitioners Ly and Morgan also ask us to review an FMCSA legal memorandum issued months after the preemption determination. In that

\*    \*    \*

We appreciate petitioners' arguments in favor of their preferred approach to governance in the area of commercial motor vehicle safety.  But in this case, petitioners' objections are ultimately as much to the statute Congress drafted as they are to the FMCSA's preemption determination.  Under the principles that govern our evaluation of the agency's decision, the petitions for review must be

**DENIED.**

---

memorandum, an FMCSA lawyer opined that the agency's preemption decision applied retroactively.  This determination was not part of the preemption determination on review, *see* 49 U.S.C. § 31141(f), nor was it final agency action, *see* 5 U.S.C. § 704.  We thus do not consider the retroactivity issue.

Finally, pro se intervenor William Trescott asks the court to vacate various federal regulations.  These issues are also not part of the FMCSA's preemption determination and are thus not before us. 49 U.S.C. § 31141(f).  Trescott's motion to expedite the appeal is **DENIED** as moot.