Filed 1/19/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GUILLERMO ESPINOZA, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> HEPTA RUN, INC., et al., <br><br> Defendants and Appellants. | B306292 <br><br> (Los Angeles County <br> Super. Ct. No. NC061371) |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge. Affirmed in part, reversed in part with directions.

Booth, Hillary Arrow Booth and Allan P. Bareng for Defendants and Appellants Hepta Run, Inc. and Ed Tseng.

Law Offices of Stephen Glick and M. Anthony Jenkins for Plaintiff and Respondent.

_____

Guillermo Espinoza sued his former employer, Hepta Run, Inc., and its owner, Ed Tseng, asserting causes of action for Labor Code wage and hour violations, unfair business practices in violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.) and representative claims for penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).[1]  Following a bench trial the court entered judgment in favor of Espinoza for $84,117.73. Hepta Run and Tseng appeal the judgment, as well as the trial court's earlier order denying their motion for summary adjudication based on federal preemption of Espinoza's meal and rest period claims.  We agree the trial court erred in denying the motion for summary adjudication, reverse the judgment to that extent, otherwise affirm, and remand with directions for the trial court to redetermine the appropriate damage award and modify the judgment accordingly.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Espinoza's Claims and the Motion for Summary Adjudication*

On September 11, 2017 Espinoza filed a complaint, and on June 21, 2019 the operative fourth amended complaint, against Hepta Run, Tseng and Tawny Hart, who Espinoza believed to be the general manager of Hepta Run,[2] alleging causes of action for

---

[1]  Statutory references are to this code unless otherwise stated.

[2]  At the conclusion of Espinoza's case-in-chief, the trial court granted Hart's motion for a directed verdict; and judgment was entered in her favor on January 23, 2020.  Hart is not a party to this appeal.

failure to reimburse for work expenses (§ 2802) (first cause of action), failure to pay minimum wage for nonproductive time (§ 1194) (second cause of action), failure to compensate for rest periods (§ 226.2) (third and fourth causes of action), failure to provide meal and rest periods (§ 226.7) (fifth and sixth causes of action), waiting time penalties (§ 203) (seventh cause of action), failure to furnish itemized wage statements (§ 226) (eighth cause of action), unfair business practices (ninth cause of action), and representative claims for civil penalties under PAGA (tenth and eleventh causes of action). Espinoza further alleged Tseng and Hart were personally liable for damages accrued after January 1, 2016 for the first, second, and fifth through eighth causes of action pursuant to section 558.1.

In April 2019 Hepta Run, Tseng and Hart moved for summary adjudication on the fifth and sixth causes of action, arguing the California statutes governing meal and rest periods were preempted by federal regulations concerning commercial motor vehicle safety. The motion was denied on July 30, 2019.

2. *The Bench Trial*

The three-day bench trial commenced on November 18, 2019. Espinoza testified he began working as a truck driver for HRT Trucking, Inc. in December 2015. At some point HRT changed its name to Hepta Run.[3] Espinoza continued to drive a truck for the company until November 2016.

---

[3] HRT was also named as a defendant in this action. The operative complaint alleged HRT had surrendered its right to do business in California, and the record does not indicate HRT made an appearance in the case. The exact timing of the change from HRT to Hepta Run and the legal mechanism by which it was accomplished are unclear from the record. Regardless, Tseng

Espinoza testified he worked approximately nine to 12 hours per day, five days a week. At the beginning of each shift Espinoza went to HRT or Hepta Run's truck yard to pick up a truck. He spent approximately 10 minutes doing a pre-trip inspection, then drove to the Port of Long Beach to pick up a shipping container. Once he had loaded the container onto the truck, which could involve waiting two or three hours for the container, Espinoza drove to the customer's location to deliver the container. Espinoza often had to wait two or three hours at the customer's location. He also regularly spent time washing and putting gasoline in the truck. Espinoza was instructed to watch the truck at all times such that he could not take a meal or rest break away from the truck. At the end of each shift Espinoza returned the truck to HRT or Hepta Run's truck yard and left the keys there. He typically drove the truck a total of approximately 60 miles each day.

Espinoza was compensated per completed trip without any additional or separate payment for time spent waiting, loading and unloading cargo or maintaining and inspecting the truck; nor was he compensated for any rest periods. Espinoza was paid weekly, and his paycheck included deductions for fuel and insurance. The paychecks did not list the hours worked during the pay period.

Tseng did not testify at trial, but portions of his deposition testimony were received in evidence. Although the owner and president of both HRT and Hepta Run, Tseng testified he was not

testified he was the sole owner of both companies, and Hepta Run has not disputed the trial court's finding it was Espinoza's employer during the entirety of his employment with both entities.

involved in the companies' daily operations and did not know whether they transported cargo from the Port of Long Beach. Tseng explained, because he had no knowledge of the trucking industry, he had hired a professional manager to advise him on establishing a business model. The manager proposed operating in California and paying drivers per trip. Tseng approved the business model.

At the conclusion of Espinoza's case-in-chief Tseng moved for nonsuit, arguing Espinoza had failed to prove his liability under section 558.1, which provides a person acting on behalf of an employer who causes a Labor Code wage and hour violation is liable for the violation. Tseng argued he did not know anything about the trucking business and had merely approved the recommendations of the professional manager, which he asserted was insufficient to impose personal liability under the statute. The court denied the motion.

After presenting their evidence Hepta Run and Tseng moved for a directed verdict, in part based on a lack of evidence Tseng could be personally liable under section 558.1. The court denied the motion, finding Tseng's testimony he did not know anything about HRT and Hepta Run's business was not credible. The court stated, "He was the sole owner of HRT, Hepta Run. He was the sole president of HRT and Hepta Run. He operated his business, including his operation in California, by hiring so-called professional managers. Professional managers presented him with a model. He approved it."

3. *The Statement of Decision and Judgment*

After hearing closing arguments the court found Hepta Run and Tseng were liable to Espinoza for Labor Code violations and requested additional briefing on damages.[4]

Espinoza's damages brief requested total damages on the first through eighth causes of action of approximately $68,000, plus interest. No monetary recovery was requested on the unfair business practices claim. Hepta Run and Tseng filed a response in which they argued Espinoza had not established liability for Labor Code violations and Tseng was not personally liable under section 558.1. They also disputed the methodology used to calculate the damages, as well as the amounts requested.

At the outset of the hearing on damages Hepta Run and Tseng's counsel informed the trial court they would stipulate to the damages amount. Hepta Run and Tseng requested a statement of decision. At the court's request Espinoza filed a proposed statement of decision to which Hepta Run and Tseng objected.

On March 25, 2020 the trial court overruled the objections to the statement of decision (other than two minor changes) and adopted the proposed statement of decision as its final decision. The statement of decision explained the court's reasoning for finding Espinoza was an employee rather than an independent contractor and finding Tseng was individually liable pursuant to section 558.1. The court found Hepta Run and Tseng had deducted business expenses from Espinoza's compensation

---

[4]     The trial court found Espinoza was an employee of Hepta Run and HRT, not an independent contractor. The court also found Espinoza failed to establish a representative claim under PAGA. Neither finding has been appealed.

6

without reimbursing him, did not compensate him for rest periods and nonproductive time and did not provide him with required meal and rest periods.

Judgment was entered on May 22, 2020. Espinoza was awarded $62,710.81, plus interest of $15,901.53, against Hepta Run and Tseng jointly and severally. In addition, Espinoza was awarded an additional $3,975.28, plus interest of $1,530.11, against Hepta Run only.[5]

## DISCUSSION

1. *Standard of Review*

On appeal from a judgment based on a statement of decision following a bench trial, we review the trial court's legal interpretation of the governing statutes de novo and the court's factual findings for substantial evidence. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801; *Veiseh v. Stapp* (2019) 35 Cal.App.5th 1099, 1104.)

Substantial evidence review requires that we "'"'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment."'" (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015)

---

[5] Because the statute providing for personal liability of an employer or its representative (§ 558.1) did not go into effect until January 1, 2016, Espinoza sought damages from Tseng as of that date. Damages incurred in 2015 were sought from Hepta Run only.

239 Cal.App.4th 1088, 1102; accord, *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 334 ["'questions as to the weight and sufficiency of the evidence, the construction to be put upon it, the inferences to be drawn therefrom, the credibility of witnesses . . . and the determination of [any] conflicts and inconsistencies in their testimony are matters for the trial court to resolve'"]; *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571 ["'[w]hen two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court'"].)

2. *The Trial Court Erred by Denying the Motion for Summary Adjudication*

a. *Relevant procedural background*

Hepta Run and Tseng moved for summary adjudication on Espinoza's fifth (meal periods) and sixth (rest periods) causes of action, arguing California laws and industry regulations providing for meal and rest periods were preempted by federal regulations governing truck drivers. In opposition Espinoza argued the federal regulations did not apply to short haul truck drivers like him. The trial court agreed with Espinoza and denied the motion for summary adjudication.[6]

---

[6] Generally, the denial of a motion for summary adjudication is deemed to be "harmless error after a full trial covering the same issues." (*Legendary Investors Group No. 1, LLC v. Niemann* (2014) 224 Cal.App.4th 1407, 1410-1411.) However, "denial of the motion may constitute prejudicial error if the motion is denied on a legal ground not presented at trial." (*Id*. at p. 1411; see also *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343.) Because the summary adjudication motion here did not involve disputed issues of fact and the

b. *General principles of preemption*

The United States Supreme Court has traditionally recognized preemption of state law by federal enactments pursuant to the supremacy clause (U.S. Const., art. VI, cl. 2) in three circumstances: (1) express preemption; (2) implied (or field) preemption; and (3) conflict preemption. (*English v. General Electric Co.* (1990) 496 U.S. 72, 78-79 [110 S.Ct. 2270].) Express preemption, which is pertinent here, exists when Congress defines the extent to which its enactments will displace state law. (*Id.* at p. 78; accord, *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Com.* (1983) 461 U.S. 190, 203-204 [103 S.Ct. 1713] ["[i]t is well established that within constitutional limits Congress may pre-empt state authority by so stating in express terms"]; *Valencia v. SCIS Air Security Corp.* (2015) 241 Cal.App.4th 377, 383 ["Congress has the power to enact federal laws that trump or 'preempt' conflicting state laws and may exercise that power by enacting an express preemption provision"].) "If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." (*Altria Group, Inc. v. Good* (2008) 555 U.S. 70, 76 [129 S.Ct. 538].)

"Federal regulations may preempt state law just as fully as federal statutes. [Citation.] An agency may preempt state law through regulations that are within the scope of its statutory authority and that are not arbitrary." (*Washington Mutual Bank v. Superior Court* (2002) 95 Cal.App.4th 606, 612; accord,

---

argument was not raised at trial, we review the court's order denying the motion for summary adjudication.

9

*Louisiana Public Service Com. v. FCC* (1986) 476 U.S. 355, 369 [106 S.Ct. 1890] ["Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation"].) A federal agency's preemption determination based on interpretations of its own regulations and of the statutory scheme it administers should be accorded substantial deference. (*Kisor v. Wilkie* (2019) __ U.S. __ [139 S.Ct. 2400, 2415] [courts should defer to agency's reasonable reading of "genuinely ambiguous" regulations]; *Chevron, U.S.A., Inc. v. Natural Res. Def. Council* (1984) 467 U.S. 837, 844 [104 S.Ct. 2778] ["considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer"]; *Washington Mutual Bank*, at p. 620, fn. 5 ["[a]n agency's construction of its own regulations is entitled to substantial deference"]; see also *Zubarau v. City of Palmdale* (2011) 192 Cal.App.4th 289, 306 ["[a]n agency declaration of preemption can preempt unless the authorizing statute or legislative history of the statute is to the contrary"].)

### c. *California meal and rest break rules*

California law provides every nonexempt employee in the transportation industry must be provided with a 30-minute meal period for every five hours worked and a 10-minute rest period for every four hours worked. (Cal. Code Regs., tit. 8, § 11090, subds. 11 & 12; see also § 226.7, subd. (c).) "If an employer fails to provide an employee a meal or rest or recovery period[7] in accordance with a state law, including, but not limited to, an

---

7　A "'recovery period' means a cooldown period afforded an employee to prevent heat illness." (§ 226.7, subd. (a).)

10

applicable statute or applicable regulation, . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." (§ 226.7, subd. (c); Cal. Code Regs., tit. 8, § 11090, subds. 11(D) [meal periods] & 12(B) [rest periods].)

### d. *Applicable federal regulations*

The Motor Carrier Safety Act of 1984 empowers the Secretary of Transportation to "prescribe regulations on commercial motor vehicle safety," including regulations ensuring "the responsibilities imposed on operators of commercial motor vehicles do not impair their ability to operate the vehicles safely." (49 U.S.C. § 31136(a).) One such set of regulations, often referred to as the hours of service regulations or HOS, imposes limits on driving time and on duty time for commercial truck drivers. (See 49 C.F.R. § 395.3 (2020).)

Pursuant to the HOS regulations property-carrying commercial truck drivers are subject to daily and weekly limits on driving time and on-duty time and are mandated to have 10 consecutive hours off duty between shifts. (49 C.F.R. § 395.3 (2020).) In addition, long haul truck drivers are required to take a 30-minute rest break for every eight hours worked; short haul drivers are exempted from the 30-minute rest break requirement. (49 C.F.R. § 395.3(a)(ii).)[8]

---

[8] During the relevant time period, a property-carrying short haul driver was defined as a driver who "operates within a 100 air-mile radius of the normal work reporting location"; "returns to the work reporting location and is released from work within 12 consecutive hours"; and "has at least 10 consecutive hours off-

11

e. *The Federal Motor Carrier Safety Administration's preemption determination*

The Motor Carrier Safety Act of 1984 gives the Secretary of Transportation the authority to preempt state law if certain criteria are met. (49 U.S.C. § 31141(a) ["[a] State may not enforce a State law or regulation on commercial motor vehicle safety that the Secretary of Transportation decides under this section may not be enforced"].) To declare a state law preempted the Secretary must first find the state law is either less stringent, additional to or more stringent than the federal regulation; and, if the state law is additional to or more stringent, the Secretary must find the state law has no safety benefit, is incompatible with the federal regulation, or enforcement of the state law would cause an unreasonable burden on interstate commerce. (49 U.S.C. § 31141(c).) The Secretary has delegated this preemption analysis and determination to the Administrator for the Federal Motor Carrier Safety Administration (FMCSA). (49 C.F.R. § 1.87(f) (2020).)

In 2018, in response to petitions from two industry groups, the FMCSA issued an order stating the California meal and rest break rules (§ 226.7) were preempted by the federal hours of service regulations. (See California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers, 83 Fed.Reg. 67470-67480 (Dec. 28, 2018).) The FMCSA undertook the preemption analysis mandated by Congress, finding California's laws were additional to or more stringent than the federal regulations, had no safety benefit beyond those provided by the federal regulations, were

---

duty separating each 12 hours on duty." (49 C.F.R. § 395.1(e)(1) (2016).)

incompatible with the federal regulations and would cause an unreasonable burden on interstate commerce. Accordingly, the FMCSA concluded, "California may no longer enforce the [Meal and Rest Break] Rules with respect to drivers of property-carrying [commercial motor vehicles] subject to FMCSA's HOS rules." (83 Fed.Reg. 67480.) Recently, the Ninth Circuit upheld the FMCSA's determination, finding the agency's "decision reflects a permissible interpretation of the Motor Carrier Safety Act of 1984 and is not arbitrary or capricious." (*International Brotherhood of Teamsters, Local 2785 v. Federal Motor Carrier Safety Administration* (9th Cir. 2021) 986 F.3d 841, 846.)

### f. *The FMCSA's preemption determination applies to short haul drivers*

Espinoza does not challenge the findings of the FMCSA or its ultimate determination, where applicable, that California meal and rest period requirements are preempted by the federal hours of service regulations. Rather, Espinoza argues the preemption determination does not apply to short haul drivers. Citing the language of the FMCSA's preemption order stating it applies to drivers "subject to FMCSA's HOS rules" (83 Fed.Reg. 67480), Espinoza argues this means "that it applies to drivers subject to the HOS rules, *not* that the Order applies to drivers who are subject to some of the HOS rules." His position, in other words, is, because short haul drivers are exempted from one of the HOS rules (the 30-minute rest break rule), the preemption order does not apply to them.

We decline to adopt such a strained and cramped interpretation of the FMCSA's preemption order. It is undisputed that certain hours of service rules apply to short haul drivers, such as the daily limits on driving time and the daily and

weekly limits on on-duty time. Thus, the HOS rules, as a general matter, apply to short haul drivers. The fact that those drivers are exempted from one rule does not remove them from the universe of drivers subject to the hours of service rules, and it is not reasonable to read the language of the order to suggest they are.

This common sense interpretation of the preemption order is reinforced by the fact that the FMCSA, had it intended to exclude short haul drivers from its preemption determination, could have easily, and explicitly, done so. In fact, one of the petitions prompting the FMCSA's opinion requested a declaration that California's meal and rest break laws "'are preempted from being applied to drivers subject to the HOS regulations on rest breaks.'" (83 Fed.Reg. 67472.) The FMCSA, however, did not use this limiting language, instead repeatedly stating its decision applied to drivers subject to the federal HOS regulations generally. (See 83 Fed.Reg. 67470 ["FMCSA grants the petitions insofar as the provisions at issue apply to drivers of property-carrying [commercial motor vehicles] subject to the FMCSA's hours of service regulations"], 67474 [California rules were subject to preemption review because they concern motor vehicle safety "as applied to property-carrying [commercial motor vehicle] drivers that are within the Agency's HOS jurisdiction"], 67477 ["the Agency determines that [California's meal and rest break rules] are incompatible with the Federal HOS regulations"].)

Furthermore, the FMCSA's reasoning for its preemption decision does not support Espinoza's interpretation of the opinion. For example, in determining California's rules were incompatible with federal regulations, the FMCSA stated that

14

California's rules "are more stringent than the Federal HOS regulations . . . . Not only do the [California meal and rest break rules] require employers to provide [commercial motor vehicle] drivers with more rest breaks than the Federal HOS regulations, the timing requirements for rest periods under the [California meal and rest break rules] provide less flexibility than the Federal HOS regulations. . . . [The California requirements] . . . significantly reduce[ ] the flexibilities the Agency built into the Federal HOS regulations, and they graft onto the Federal HOS rules additional required rest breaks that the Agency did not see fit to include." (83 Fed. Reg. 67478.) Given that short haul drivers are not required to take any specified rest breaks under the federal rules, the Agency's concern over California's additional rest break requirement would be heightened for short haul drivers, not diminished. Accordingly, the FMCSA's reasoning supports applying preemption to short haul drivers rather than excluding them.[9] The motion for summary

---

[9] The few federal court decisions that have considered the question whether the FMCSA's preemption order applies to short haul drivers have likewise found it does, albeit without any explanation for their conclusion. (See *Salter v. Quality Carriers, Inc.* (C.D.Cal. Oct. 27, 2021, No. CV 20-479-JFW (JPRx)) 2021 U.S.Dist. Lexis 213111, at p. *28 ["Plaintiff has failed to demonstrate that the FMCSA's Order does not apply [to] short haul drivers"]; *Robinson v. Chefs' Warehouse, Inc.* (N.D.Cal. Sept. 10, 2019, No. 15-cv-05421-RX) 2019 U.S.Dist. Lexis 154383, at p. *12 ["Plaintiffs have not shown, however, that the Order excludes short haul drivers"]; but see *Arrellano v. XPO Port Service Inc.* (C.D.Cal. Mar. 30, 2021, No. 2:18-CV-08220-RGK(E)) 2021 U.S.Dist. Lexis 193382, at pp. *7-8 [noting employer "does not dispute that the FMCSA order does not preempt meal and rest break claims that are brought by short-haul drivers" but

15

adjudication on Espinoza's fifth and sixth causes of action should have been granted.

3. *The Trial Court Did Not Err in Finding Tseng Personally Liable Pursuant to Section 558.1*

a. *Governing law*

Effective January 1, 2016, section 558.1 provides: "(a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation. [¶] (b) For purposes of this section, the term 'other person acting on behalf of an employer' is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term 'managing agent' has the same meaning as in subdivision (b) of Section 3294 of the Civil Code."[10]

---

finding plaintiff had failed to plead that all class members were short haul drivers].)

[10] Section 3294, subdivision (b), of the Civil Code provides an employer shall not be liable for punitive damages based on acts of an employee unless there has been "advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice" on the part of "an officer, director, or managing agent of the corporation." Courts have defined a "managing agent" pursuant to this statute to be an employee who "exercises substantial discretionary authority over decisions that ultimately determine corporate policy." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 573.)

16

Prior to the enactment of section 558.1 an employee could generally not recover damages for wage and hour violations from an individual owner or officer of the employer unless the employee could prove some other legal basis for liability such as alter ego liability. (See *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1159 [recognizing limited remedies for employees to recover against individual officers prior to section 558.1].) As a result, even when an employee obtained a judgment against a corporate employer, "the process of collecting the award [was] often difficult and ineffective. Irresponsible employers may have hidden their cash assets, declared bankruptcy, or otherwise become judgment-proof." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 588 (2015-2016 Reg. Sess.) as amended July 1, 2015, p. 4; accord, Sen. Com. on Labor & Industrial Relations, Analysis of Sen. Bill No. 588 (2015-2016 Reg. Sess.) Apr. 29, 2015, pp. 5-6 ["the vast majority of wage theft victims received nothing, and those that received anything received little of what they were legally due"].)

In response to this problem, section 558.1 was intended by the Legislature to expand liability for wage and hour violations and "discourage business owners from rolling up their operations and walking away from their debts to workers and starting a new company." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 588 (2015-2016 Reg. Sess.) Apr. 20, 2015, p. 12; see also *Voris v. Lampert*, *supra*, 7 Cal.5th at p. 1161 [section 558.1 "targets individual officers who are involved in the failure to pay wages"].)

b. *Substantial evidence supports the finding Tseng caused the Labor Code violations*

Tseng contends he cannot be held liable pursuant to section 558.1 because he was uninvolved in both the daily operation of Hepta Run and the creation of the policies governing

17

its operation and argues the trial court improperly found him liable "solely by virtue of his status as the sole owner" of HRT and Hepta Run. Tseng's challenge to the trial court's liability finding is belied by the record. As discussed, the trial court explicitly found Tseng's testimony that he lacked knowledge of the business's daily operations not credible. Further, the court stated it based its finding of personal liability not merely on Tseng's status as owner and officer but also on the undisputed testimony he had approved the policy establishing the method of driver compensation. We agree with the trial court an owner's or officer's approval of a corporate policy that violates the Labor Code is sufficient to find that individual caused the Labor Code violation within the meaning of section 558.1.

Only one published California case has addressed what acts are sufficient for a finding of personal liability under section 558.1. In *Usher v. White* (2021) 64 Cal.App.5th 883, our colleagues in Division One of the Fourth District considered whether personal liability could be imposed on a corporate officer who assisted with administrative and banking tasks but had no role in day-to-day operations or employment policies. After reviewing recent federal district court decisions, which generally had found an individual could not be liable under section 558.1 simply by virtue of his or her status as an owner, director or officer but must have been "'personally involved' in the alleged violations" or "engaged in 'individual wrongdoing'" (*Usher*, at pp. 895-896),[11] the *Usher* court concluded, "[T]o be held liable

---

[11] Cases discussed by the *Usher* court included *Rios v. Linn Star Transfer, Inc.* (N.D.Cal. Apr. 6, 2020, Nos. 19-cv-07009-JSC et al.) 2020 U.S.Dist. Lexis 60270, at pages *14-15 and *Plaksin v.*

18

under section 558.1, an 'owner' . . . must either have been personally involved in the purported violation of one or more of the enumerated provisions; or, absent such personal involvement, had sufficient participation in the activities of the employer, including, for example, over those responsible for the alleged wage and hour violations, such that the 'owner' may be deemed to have contributed to, and thus for purposes of this statute, 'cause[d]' a violation." (*Id.* at pp. 896-897.) The court further cautioned that whether an individual could be liable under section 558.1 "cannot be determined by any bright-line rule, as this inquiry requires an examination of the particular facts in light of the conduct, or lack thereof, attributable to the [individual]." (*Id.* at p. 897.) Turning to the case before it, the court held the individual defendant was not liable because the undisputed facts showed she had not participated in the relevant employment decisions. (*Ibid.* ["Shirley was never consulted about, or provided any guidance regarding, the classification of service technicians; played no role in the hiring of technicians; did not create, draft or contribute to the content of any of the independent contractor agreements utilized by White Communications; and did not sign any such agreements on behalf of the company"].)

We agree generally with *Usher* and the federal cases it cited that, in order to "cause" a violation of the Labor Code, an individual must have engaged in some affirmative action beyond his or her status as an owner, officer or director of the corporation. However, that does not necessarily mean the

---

*Newsight Reality* (C.D.Cal. Apr. 30, 2019, No. 2:19-cv-00458-RGK-SS) 2019 U.S.Dist. Lexis 168063, at page *13.

19

individual must have had involvement in the day-to-day operations of the company, nor is it required the individual authored the challenged employment policies or specifically approved their implementation. But to be held personally liable he or she must have had some oversight of the company's operations or some influence on corporate policy that resulted in Labor Code violations.

The record in the present case amply supported the trial court's finding Tseng "caused" the Labor Code violations within the meaning of section 558.1. It was undisputed Tseng was the sole owner and president of both HRT and Hepta Run, and he admitted he had approved the policy regarding payment of truck drivers that violated various provisions of the Labor Code. Although he testified he had no involvement in or knowledge of the business's operations the trial court did not credit that testimony, justifying the conclusion Tseng knew how his drivers were paid (and not paid).

4. *Hepta Run and Tseng's Arguments Challenging the Sufficiency of the Evidence Have Been Forfeited*

In their opening brief Hepta Run and Tseng present a convoluted, two-page argument that, while briefly suggesting error in the statement of decision and rearguing the federal preemption issue, appears to challenge the trial court's judgment on substantial evidence grounds. However, despite pointing out that each of Espinoza's 11 causes of action "has required elements that need to be established by a preponderance of the evidence," in their opening brief Hepta Run and Tseng fail to identify those elements or provide any legal argument explaining

20

how the evidence at trial was insufficient to support a finding those elements had been met.[12]

Hepta Run and Tseng's challenge to the sufficiency of the evidence to support the court's ruling has been forfeited. (See *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 ["'an appellate brief "should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration"'"].) They have failed to make even a minimum showing warranting consideration. (See *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 ["it is counsel's duty to point out portions of the record that support the position taken on appeal"; "[t]he appellate court is not required to search the record on its own seeking error"]; *Mansell,* at pp. 545-546 [it is not the proper function of court of appeal to search the record on behalf of appellants or to serve as "backup appellate counsel"].)

> 5. *Hepta Run and Tseng's Arguments Challenging the Amount of Damages Have Been Forfeited*

Hepta Run and Tseng argue Espinoza's damages calculations relied on inadmissible evidence and improper methodologies. However, Hepta Run and Tseng consented to the amount of damages awarded.

At the outset of the hearing on damages, Hepta Run and Tseng's counsel requested a recess to discuss the damage amounts with Espinoza's counsel. After the recess Espinoza's counsel informed the court the parties had agreed to a small reduction in the amount requested and would stipulate to

---

[12]    Hepta Run and Tseng did not file a reply brief.

damages of $62,710.81, plus interest of $15,901.53, for which Hepta Run and Tseng would be jointly liable and an additional $3,973.28, plus interest of $1,530.11, for which Hepta Run was separately liable.  The trial court asked Hepta Run and Tseng's counsel, "So based on stipulation, you're still contesting liability.  Assuming liability is upheld, you're stipulating to the numbers in terms of damages, correct?"  Counsel replied, "That's correct, your honor."  The court then read the amounts and asked counsel again if he stipulated to those amounts.  Counsel replied that he did.  Judgment was later entered in the amount stated on the record.  Appellants' opening brief fails to address the stipulation, and they declined to file a reply brief.

Having stipulated to the amount of damages, Hepta Run and Tseng have forfeited their claim of error.  (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1328 ["'when a party enters into a voluntary stipulation, he generally is precluded from taking an appeal claiming defects in the stipulation'"]; *People v. Gurule* (2002) 28 Cal.4th 557, 623 [same]; *In re Marriage of Freeman* (1996) 45 Cal.App.4th 1437, 1452 [same].)

## DISPOSITION

We reverse the judgment as to the fifth and sixth causes of action and reverse the order denying summary adjudication on those causes of action.  In all other respects, we affirm.  On remand, the trial court is directed to grant the motion for summary adjudication, redetermine the proper damage award on

the remaining causes of action on which Espinoza prevailed and enter a modified judgment in accordance with this opinion.  The parties are to bear their own costs on appeal.


                                        PERLUSS, P. J.

    We concur:


        SEGAL, J.


        FEUER, J.