**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

NATIONAL RAILROAD PASSENGER CORPORATION, Amtrak; BNSF RAILWAY COMPANY; UNION PACIFIC RAILROAD COMPANY; LOS ANGELES JUNCTION RAILWAY; TTX COMPANY; CENTRAL CALIFORNIA TRACTION COMPANY,

*Plaintiffs-Appellees*,

v.

JULIE A. SU, in her official capacity as Labor Commissioner, State of California Division of Labor Standards Enforcement,

*Defendant-Appellant,*

BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN; BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES; BROTHERHOOD OF RAILROAD SIGNALMEN; INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; NATIONAL

Nos. 21-15816
21-15825

D.C. No.
2:15-cv-00924-
KJM-JDP

OPINION

CONFERENCE OF FIREMEN &
OILERS DISTRICT OF LOCAL 32BJ,
    *Intervenor-Defendants-*
    *Appellants-Intervenors.*

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted March 17, 2022
San Francisco, California

Filed July 26, 2022

Before: Morgan Christen and Daniel A. Bress, Circuit
Judges, and Barbara M. G. Lynn,[*] District Judge.

Opinion by Judge Bress

---

[*] The Honorable Barbara M. G. Lynn, Chief United States District
Judge for the Northern District of Texas, sitting by designation.

# SUMMARY[**]

## Railroad Unemployment Insurance Act / Preemption

Affirming the district court's summary judgment in favor of National Railroad Passenger Corporation and other railroad companies, the panel held that, as to railroad employees, the federal Railroad Unemployment Insurance Act preempts California's Healthy Workplaces, Healthy Families Act, which requires employers to provide employees with paid sick leave that they may use for specified purposes.

RUIA provides unemployment and sickness benefits to railroad employees, and it contains an express preemption provision disallowing railroad employees from having any right to "sickness benefits under a sickness law of any State." Looking to the plain meaning of the statutory text, the panel concluded that the preemption provision broadly refers to compensation or other assistance provided to employees in connection with physical or mental well-being. The panel concluded that RUIA's statutory framework and stated purposes confirm the breadth of its preemptive effect.

The panel held that, as applied to railroad employees, the California Act falls within RUIA's preemption clause because, properly considered in light of RUIA's plain text and structure, the California Act is a "sickness law" that provides "sickness benefits."

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Agreeing with the First Circuit, the panel found unpersuasive an argument by the California Labor Commissioner and union-intervenors that RUIA does not preempt the California Act as to railroad employees because the benefits the Act offers are different in kind than RUIA's benefits. The panel also found unpersuasive (1) an argument that RUIA should be interpreted as preempting only the kinds of state laws that existed at the time RUIA was amended to provide for sickness benefits; and (2) various textual arguments in support of a narrower interpretation of the preemption provision.

## COUNSEL

Kristin A. Liska (argued), Deputy Attorney General; Heather Hoesterey and Anthony Hakl, Supervising Deputy Attorneys General; Thomas S. Patterson, Senior Assistant Attorney General; Rob Bonta, Attorney General; Office of the Attorney General, San Francisco, California; for Defendant-Appellant.

Lucas R. Aubrey, Sherman Dunn P.C., Washington, D.C.; Erika A. Diehl-Gibbons, Associate General Counsel, SMART-TD, North Olmsted, Ohio; Richard Edelman, Mooney Green Saindon Murphy and Welch PC, Washington, D.C.; Josh D. McInerney, Wentz McInerney Peifer & Petroff LLC, Powell, Ohio; for Intervenor-Defendants-Appellants-Intervenors.

Donald J. Munro (argued), Anthony J. Dick, and H. Hunter Bruton, Jones Day, Washington, D.C.; Kelsey A. Israel-Trummel, Jones Day, San Francisco, California; for Plaintiffs-Appellees.

**OPINION**

BRESS, Circuit Judge:

The Railroad Unemployment Insurance Act (RUIA) is a federal law that provides the exclusive source of unemployment and sickness benefits to railroad employees. RUIA also contains an express preemption provision disallowing railroad employees from having any right to "sickness benefits under a sickness law of any State." 45 U.S.C. § 363(b). In 2014, California enacted the Healthy Workplaces, Healthy Families Act, which requires employers to provide employees with paid sick leave that they may use for specified purposes. The question in this case is whether RUIA preempts this California law as to railroad employees. We hold that it does.

I

A

Owing to its interstate nature, the railroad industry has long been subject to extensive and often exclusive federal regulation. In 1938, Congress passed RUIA to provide unemployment benefits for railroad employees. *See* 45 U.S.C. §§ 351–369; *R.R. Ret. Bd. v. Duquesne Warehouse Co.*, 326 U.S. 446, 448 (1946). An employee who is eligible for RUIA benefits may receive approximately sixty percent of his daily pay, subject to certain limitations, while he remains unemployed. 45 U.S.C. § 352(a)(1)–(3).

In 1946, Congress amended RUIA to also provide railroad employees with "sickness benefits." *See id.* § 352(a)(1)(B); *CSX Transp., Inc. v. Healey*, 861 F.3d 276, 277 (1st Cir. 2017). These benefits, which likewise amount

to sixty percent of daily pay, are available "for each day of sickness after the 4th consecutive day of sickness in a period of continuing sickness." 45 U.S.C. § 352(a)(1)(B)(i). RUIA defines "day of sickness" in relevant part as "a calendar day on which because of any physical, mental, psychological, or nervous injury, illness, sickness, or disease [the employee] is not able to work." *Id.* § 351(k)(2). "Day of sickness" also includes "with respect to a female employee, a calendar day on which, because of pregnancy, miscarriage, or the birth of a child, (i) she is unable to work or (ii) working would be injurious to her health." *Id.* The phrase "period of continuing sickness" means either "consecutive days of sickness, whether from 1 or more causes" or "successive days of sickness due to a single cause without interruption of more than 90 consecutive days." *Id.* § 352(a)(1)(B)(iii).

The benefits available under RUIA are funded by a special tax on railroad employers "equal to 4 percent of the total rail wages." *See* Railroad Unemployment Repayment Tax Act, 26 U.S.C. § 3321(b)(1); *Trans-Serve, Inc. v. United States*, 521 F.3d 462, 464, 466 (5th Cir. 2008). To ensure that the federal regulatory scheme would not impose an undue economic burden on railroad companies, Congress simultaneously exempted these employers from certain state laws. *See* 45 U.S.C. § 363(b); *CSX Transp.*, 861 F.3d at 282 (noting RUIA's "stated purpose of protecting interstate rail regulation from the burdens of state sickness law").

RUIA's preemption provision, which is at the center of this case, reads in relevant part:

> By enactment of this chapter the Congress makes *exclusive provision* for the payment of unemployment benefits for unemployment occurring after June 30, 1939, and for the payment of sickness benefits for sickness

periods after June 30, 1947, based upon employment (as defined in this chapter). No employee shall have or assert any right to unemployment benefits under an unemployment compensation law of any State with respect to unemployment occurring after June 30, 1939, or *to sickness benefits under a sickness law of any State* with respect to sickness periods occurring after June 30, 1947, based upon employment (as defined in this chapter).

The Congress finds and declares that by virtue of the enactment of this chapter, the application of State unemployment compensation laws after June 30, 1939 or of State sickness laws after June 30, 1947, to such employment, except pursuant to section 362(g) of this title, would constitute an undue burden upon, and an undue interference with the effective regulation of, interstate commerce.

45 U.S.C. § 363(b) (emphasis added).

B

In 2014, the California legislature passed the Healthy Workplaces, Healthy Families Act, which we will refer to as the "California Act" or the "Act." Cal. Lab. Code §§ 245–249. The California Act "[e]nsure[s] that workers in California can address their own health needs and the health needs of their families by requiring employers to provide a minimum level of paid sick days including time for family care." A.B. 1522, 2014 Leg., Reg. Sess. § 2(a) (Cal. 2014)

(enacted legislative findings). With limited exceptions not relevant here, the Act generally requires employers to provide a minimum of twenty-four hours "paid sick leave" or three "paid sick days" per year to every employee working in California. Cal. Lab. Code § 246(a)(1), (b). Employees also accrue additional days based on the length of their employment. *Id.* § 246(b).

Under the California Act, employees may use their paid sick leave for "the following purposes":

> (1) Diagnosis, care, or treatment of an existing health condition of, or preventive care for, an employee or an employee's family member.
>
> (2) For an employee who is a victim of domestic violence, sexual assault, or stalking, the purposes described in subdivision (c) of Section 230 and subdivision (a) of Section 230.1.

*Id.* § 246.5(a). Among the purposes referred to in subsection (2) are:

> (1) To seek medical attention for injuries caused by crime or abuse.
>
> (2) To obtain services from a domestic violence shelter, program, rape crisis center, or victim services organization or agency as a result of the crime or abuse.
>
> (3) To obtain psychological counseling or mental health services related to an experience of crime or abuse.

(4) To participate in safety planning and take other actions to increase safety from future crime or abuse, including temporary or permanent relocation.

*Id.* § 230.1(a). Through its cross-reference to section 230(c), section 246.5(a)(2) further allows sick leave to be used "to obtain or attempt to obtain any relief," such as "a temporary restraining order, restraining order, or other injunctive relief, to help ensure the health, safety, or welfare of the victim or their child." *Id.* § 230(c).

The California legislature enacted the Act to promote health and employee well-being, which the legislature believed would in turn improve worker retention rates and productivity. This legislative goal is articulated in findings passed in conjunction with Act. *See* A.B. 1522, 2014 Leg., Reg. Sess. (Cal. 2014). The findings begin by emphasizing employees' need for sick days, noting that "[n]early every worker in the State of California will at some time during the year need some time off from work to take care of his or her own health or the health of family members." *Id.* at § 1(a). The findings go on to explain that "[p]roviding workers time off to attend to their own health care and the health care of family members will ensure a healthier and more productive workforce in California" by lessening recovery time, reducing the spread of illness, and increasing retention rates. *Id.* at § 1(d), (e), (h).

In this way, the California legislature found, the Act would "[e]nsure that workers in California can address their own health needs and the health needs of their families," "[d]ecrease public and private health care costs in California," and "[s]afeguard the welfare, health, safety, and prosperity of the people of and visitors to California." *Id.* at § 2(a), (b), (e). The California legislature also found that

domestic violence similarly "impacts productivity, effectiveness, absenteeism, and employee turnover in the workplace," and thus also warranted sick leave coverage. *Id.* at § 1(m)–(o); *see also id.* § 2(d).

## C

After the California Act went into effect, six railroad companies brought this suit against the California Labor Commissioner. The railroads alleged that the California Act was invalid as applied to their employees because it was preempted by RUIA and the Employee Retirement Income Security Act of 1974 (ERISA), and unconstitutional under the "dormant" Commerce Clause. The railroads sought declaratory and injunctive relief that would prohibit the Labor Commissioner from enforcing the Act against them. Several unions representing railroad employees intervened to defend the Act.

The district court granted summary judgment to the railroads. It concluded that RUIA partially preempts the California Act, and that the remainder of the Act is invalid under the dormant Commerce Clause. The Commissioner and union-intervenors appealed. We review the district court's grant of summary judgment de novo and may affirm on any ground supported by the record. *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021).

## II

## A

The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. As a

result, "it has long been settled that state laws that conflict with federal law are 'without effect.'" *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 479–80 (2013) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

When, as here, a federal statute includes an express preemption provision, "the task of statutory construction must in the first instance focus on the plain wording of the clause." *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 654 (9th Cir. 2021) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). We consider also "the surrounding statutory framework" and "Congress's stated purposes in enacting the statute" to "'identify the domain expressly pre-empted by that language.'" *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996)). Once we have done so, we ask whether the state law at issue falls within the scope of the preemption clause. *See id.*[1]

RUIA's express preemption provision is set forth in 45 U.S.C. § 363(b). In relevant part, it establishes that "[b]y enactment of this chapter the Congress makes exclusive provision for . . . the payment of sickness benefits," and consequently, "[n]o employee shall have or assert any right to . . . sickness benefits under a sickness law of any State."

---

[1] Appellants urge us to apply a presumption against preemption. However, "because the statute 'contains an express pre-emption clause,' we do not invoke any presumption against pre-emption." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (quoting *Chamber of Com. of U.S. of Am. v. Whiting*, 563 U.S. 582, 594 (2011)); *see also Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841, 853 (9th Cir. 2021) (declining to apply a presumption against preemption and explaining that "a state's traditional regulation in an area is not, standing alone, sufficient to defeat preemption in the face of an express preemption clause").

45 U.S.C. § 363(b). In determining the scope of RUIA's express preemption provision, we look first to the plain meaning of its text. *See Cal. Trucking*, 996 F.3d at 654.

Through its definition of the phrase "day of sickness," RUIA treats the notion of "sickness" expansively, encompassing calendar days "on which because of any physical, mental, psychological, or nervous injury, illness, sickness, or disease [the employee] is not able to work." 45 U.S.C. § 351(k)(2). For a female employee, a "day of sickness" also includes "a calendar day on which, because of pregnancy, miscarriage, or the birth of a child, (i) she is unable to work or (ii) working would be injurious to her health." *Id*. With this language, RUIA reflects a wide-ranging conception of "sickness." RUIA's preemption of "sickness benefits under a sickness law of any State," *id.* § 363(b), therefore broadly refers to compensation or other assistance provided to employees in connection with physical or mental well-being.

RUIA's "statutory framework" and "stated purposes" confirm the breadth of its preemptive effect. *Chae*, 593 F.3d at 942; *see also Pac. Gas & Elec. Co. v. California*, 350 F.3d 932, 947–48 (9th Cir. 2003), *as amended* (Dec. 9, 2003) (relying on "the overall structure of the Code" to determine a statute's "express preemptive scope"). The preemption provision emphasizes that RUIA is to be the "exclusive" source for the payment of sickness benefits provided to railroad employees. *See* 45 U.S.C. § 363(b). The clause also expressly communicates Congress's concern that applying "State sickness laws" to railroad employees would "constitute an undue burden upon, and an undue interference with the effective regulation of, interstate commerce." *Id.* Further reflecting RUIA's comprehensive nature, Congress directed that RUIA benefits be administered in a centralized

manner though the United States Railroad Retirement Board. *See id.* § 362(*l*).

Turning now to the California Act, we hold that as applied to railroad employees, the Act falls within RUIA's preemption clause. Properly considered in light of RUIA's plain text and structure, the California Act is a "sickness law" that provides "sickness benefits." This conclusion follows quite clearly from the text and operation of California's law. The Act itself describes the benefit it provides as "paid sick days," "paid sick leave," and "paid sick time." *See generally* Cal. Lab. Code § 246. Legislative findings passed in connection with the Act further emphasize the need to promote health and wellness by allowing employees to take time off "to attend to their own health care and the health care of family members," which the legislature found would "ensure a healthier and more productive workforce." A.B. 1522, 2014 Leg., Reg. Sess. § 1(d) (Cal. 2014).

That the California Act is a "sickness law" providing "sickness benefits" is additionally demonstrated in the enumerated purposes for which an employee may use the paid sick leave available under the Act. These purposes are centered on "sickness," as RUIA broadly conceives it. Most critically, under the California Act employees may take sick leave for the "[d]iagnosis, care, or treatment of an existing health condition of, or preventive care for, an employee or an employee's family member." Cal. Lab. Code § 246.5(a)(1). This aligns with RUIA's encompassing conception of "sickness," as we described it above. *See* 45 U.S.C. § 351(k)(2); *see also CSX Transp.*, 861 F.3d at 280 (concluding in relevant part that RUIA preempted a Massachusetts law providing paid sick leave for employee health because "[c]ertainly a 'physical or mental illness,

injury, or medical condition' is a sickness, and certainly 'paid sick time' is a benefit"). That the California Act allows employees to take "sick leave" for reasons related to a family member's health makes the benefit no less of a "sickness benefit," and the law no less of a "sickness law." Nothing in RUIA's preemption provision says that the "sickness benefit" must be based on the employee's own health.

The permissible purposes of sick leave listed in the next section of the California Act, Cal. Lab. Code § 246.5(a)(2), are those relating to domestic violence, sexual assault, and stalking. Here too, many of the purposes that the statute incorporates by reference explicitly relate to physical and mental health. For instance, under section 230.1(a)(1), employees who are victims of domestic violence, sexual assault, and stalking may use the paid sick leave "to seek medical attention for injuries caused by crime or abuse," and section 230.1(a)(3) covers "psychological counseling or mental health services related to an experience of crime or abuse." *See id.* § 230.1(a)(1), (3). These purposes are again consonant with RUIA's broad conception of "sickness."

It is true that for employees who are the victims of domestic violence, sexual assault, and stalking, the California Act also allows them to take paid sick days to obtain certain social services, "[t]o participate in safety planning and take other actions to increase safety," and "to obtain or attempt to obtain any [legal] relief." *Id.* §§ 230(c), 230.1(a)(2), (4). Although these are less inevitably described as "sickness benefits" in the abstract, these purposes do have some valence to employee health and personal well-being. *See* A.B. 1522, 2014 Leg., Reg. Sess. § 1(o) (Cal. 2014) (legislative findings stating that "[a]ffording survivors of domestic violence and sexual assault paid sick days is vital to their independence and

recovery"). And here, the California Act treats these related social services as proper subjects of "paid sick days," and the state law has an overriding emphasis on "sickness," as RUIA capaciously defined that term. We also find it significant that the paid sick time available under the California Act is not allocated to particular purposes. Rather, the Act provides only a single block of time for each employee, to be used for any of the enumerated purposes for which paid sick leave may be taken. *See CSX Transp., Inc. v. Healey*, 327 F. Supp. 3d 260, 267 (D. Mass. 2018) (concluding that as to railroad employees, RUIA entirely preempts an analogous Massachusetts law because the state law conferred "earned sick time" and "does not distinguish or apportion the hours between the kinds of sickness benefits described"). In the context of the California Act, because the "paid sick days" can be used entirely for sickness-related absences, they are properly treated as "sickness benefits."

Because RUIA states that federal law confers the "exclusive" "sickness benefits" for railroad employees, 45 U.S.C. § 363(b), the California Act infringes on RUIA's domain.

B

Notwithstanding these points, the Labor Commissioner and union-intervenors ask us to take a narrower view of RUIA's preemption provision. We now explain why we find their arguments unpersuasive.

The appellants principally argue that RUIA does not preempt the California Act as to railroad employees because the benefits the Act offers are different in kind than RUIA's benefits. The Labor Commissioner claims that RUIA provides "leave akin to short-term disability insurance," whereas the California Act covers "absences of a single day

(or even a few hours)." Likewise, the unions argue that the California Act "deals with paid time off for occasional and routine short-term employee medical conditions," which they argue is distinct from RUIA's protections for "economic loss due to inability to work for lengthy periods." Appellants contend that, based on these differences, a railroad employee may qualify for benefits under the California Act and not under RUIA.

We do not think these arguments can carry the day. The primary problem with the appellants' theory is that preemption does not turn on whether the state law at issue operates congruently with the federal law containing the preemption clause. Rather, in interpreting an express preemption provision we look to the "substance and scope of Congress' displacement of state law," based on the language the preemption provision employs. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). Congress is free to design that displacement to be either broader or narrower than the protections that the federal law confers. *See, e.g.*, *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146–47 (2001) (explaining that ERISA's "expansive" preemption clause covers any state law that "has a connection with or reference to [an ERISA] plan" (quotations omitted)); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386 (1992) (rejecting the claim that "only state laws specifically addressed to the airline industry are pre-empted" under the Airline Deregulation Act).

Here, there is no basis to conclude that Congress in § 363(b) intended to preempt only those sickness laws structured like RUIA, or only those state benefit schemes providing what could be described as short-term disability insurance. The text of RUIA's preemption provision does not impose that limitation. And implying such a condition

into RUIA would be inconsistent with Congress's stated aim of preventing multiple sickness benefit schemes for railroad companies, which Congress believed "would constitute an undue burden upon, and an undue interference with the effective regulation of, interstate commerce."  45 U.S.C. § 363(b).  Under the appellants' interpretation, a state could seemingly require railroads to provide their employees with state sickness benefits anytime those benefits differ in structure or in kind from RUIA benefits.  That would enable ready circumvention of RUIA's "exclusive" scheme.  *Id.*; *see Atay v. County of Maui*, 842 F.3d 688, 702 (9th Cir. 2016) (rejecting an interpretation of an express preemption clause that "would allow state and local governments to subvert the preemption clause").

The First Circuit in *CSX Transportation, Inc. v. Healey*, 861 F.3d 276 (1st Cir. 2017), rejected substantially the same argument in the context of a RUIA preemption challenge to a Massachusetts law analogous to the California Act.  As the First Circuit explained, "there is no anchor in the text of the preemption clause for limiting" RUIA preemption to "state benefits that are 'similar' or 'comparable to,' or 'of the type provided by, the RUIA.'"  *Id.* at 284 (alterations omitted).  Because RUIA's stated objective is to establish a uniform federal scheme, the court reasoned, "it would have been nonsensical to preempt only state replicas of the RUIA while allowing dozens of divergent schemes to proliferate."  *Id.* at 282.  We agree with the First Circuit that RUIA does not displace only those state sickness schemes relating to short-term disability insurance of the type that RUIA provides.[2]

---

[2] On remand from the First Circuit, the district court held that as to railroad employees, RUIA preempts "the entirety of the [Massachusetts law's] 'earned sick time' scheme."  *CSX Transp.*, 327 F. Supp. 3d at 266.

Next, the Commissioner asserts that RUIA should be interpreted as preempting only the kinds of state laws that existed at the time RUIA was amended to provide for sickness benefits. According to the Commissioner, only California and Rhode Island provided sickness benefits to employees in 1946, and both did so through short-term disability insurance programs that allowed employees to access benefits for longer periods of time. This argument fails for substantially the same reasons we have already given. Nothing in RUIA's text, structure, or stated objectives suggests that Congress meant to displace only the specific kinds of sickness laws already in place in 1946. *See CSX Transp.*, 861 F.3d at 285 (rejecting this same argument).

The appellants also offer various textual arguments in support of a narrower interpretation of § 363(b). The Commissioner notes that RUIA defines "benefits" as "money payments payable to an employee as provided in this chapter, with respect to his unemployment or sickness," and that elsewhere, RUIA provides railroad employees with "benefits" equal to sixty percent of daily compensation, administered by the Railroad Retirement Board, once an employee has been sick for four consecutive days. 45 U.S.C. §§ 351(*l*)(1), 352(a)(1)(A)(i), 352(a)(2). The Commissioner reasons that "sickness benefits" as used in RUIA's preemption clause must incorporate this same definition, and thus should preempt only state laws akin to RUIA itself.

This argument is unavailing. RUIA's definition of "benefits" reads in full: "The term 'benefits' (*except in*

Our holding in this case therefore aligns with the combined results of the First Circuit and district court decisions in the Massachusetts *CSX* litigation.

*phrases clearly designating other payments*) means the money payments payable to an employee as provided in this chapter with respect to his unemployment or sickness." 45 U.S.C. § 351(*l*)(1) (emphasis added).   Through this language that we have italicized, RUIA clearly establishes that the word "benefit" does not have a uniform definition throughout the statute. *Cf. Yates v. United States*, 574 U.S. 528, 537 (2015) ("We have several times affirmed that identical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute."). Section 363(b)'s "sickness benefit" is properly regarded as a "phrase[] clearly designating other payments" under § 351(*l*)(1), because the preemption provision concerns other relief provided "under a sickness law of any State." 45 U.S.C. § 363(b). The word "benefits" in RUIA's preemption provision may therefore carry a distinct meaning from how it is used elsewhere in RUIA. *See CSX Transp.*, 861 F.3d at 281 (rejecting this same argument).

The text of the preemption clause further demonstrates that "benefit" for purposes of RUIA preemption may be interpreted more broadly than merely the "benefits" provided by RUIA. On several different occasions, § 363(b) expressly constrains the meaning of certain terms in the preemption clause to their statutory definitions.   For example, § 363(b) specifically preempts only benefits "based upon employment (*as defined in this chapter*)." 45 U.S.C. § 363(b) (emphasis added).   Yet no such limitation operates on the terms "benefit" or "sickness benefit." *See CSX Transp.*, 861 F.3d at 281. So we must reject the Commissioner's attempt to constrain the meaning of "sickness benefit" in a manner that the statutory scheme does not support.

For their part, the union-intervenors advance other textual arguments that fare no better. The unions first contend that "the limited scope of RUIA preemption of state laws is evident from the title of the statute's preemption clause," which reads "Effect on State unemployment compensation laws." *See* 45 U.S.C. § 363(b). But this header is a historical artifact. When it was first enacted, RUIA provided only unemployment benefits, and Congress did not update the title after the 1946 amendment added sickness benefits. Regardless, a statute's title and headings are "but a short-hand reference to the general subject matter" and cannot "take the place of the detailed provisions of the text." *Lawson v. FMR LLC*, 571 U.S. 429, 446 (2014) (quoting *Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528 (1947)).

The unions next cite what they describe as "authoritative sources" establishing that "sickness benefits" means something other than "sick leave" or "paid sick days." But the unions' reliance on these sources is misplaced. For example, the unions rely on a booklet published by the Railroad Retirement Board which states that "you cannot claim benefits for any day on which you worked or otherwise earned ... sick pay (excluding supplemental sickness benefits)." According to the unions, this proves that "benefits" and "sick pay" are two different things, and that the preempted "sickness benefits" therefore cannot include the "paid sick leave" that the California Act confers. But this section of the booklet merely explains RUIA's requirements for eligibility, *see* 45 U.S.C. §§ 351(j), (k)(2), and nowhere purports to set forth an official interpretation of the statutory term "sickness benefits." Indeed, the booklet explicitly cautions that it "does not have the effect of law, regulation, or ruling." Thus, the booklet is not "authoritative." *See CSX Transp.*, 861 F.3d at 284 (rejecting

this same argument based on the booklet). For substantially the same reasons, the Robert's Dictionary of Industrial Relations and the Bureau of Labor Statistics' "Glossary of Compensation Terms," on which the unions also rely, do not persuade us to adopt a narrower interpretation of RUIA's preemption provision. These sources do not endeavor to define the term "sickness benefits" as used in RUIA's preemption provision.

Finally, the unions cite *Haynes v. United States*, 353 U.S. 81 (1957), claiming that there the Supreme Court "recognized that sickness benefits and sick leave are different concepts." But in *Haynes*, the Court was interpreting the Internal Revenue Code, and specifically the Code's exemption for "amounts received through accident or health insurance as compensation for personal injuries or sickness." *Id.* at 83 (quoting 26 U.S.C. § 22(b)(5) (1952)). *Haynes* thus does not bear on our interpretation of RUIA.

In short, we see no valid basis for interpreting "sickness benefits" to mean "short-term disability plans," as appellants maintain. We conclude that under RUIA, the California Act cannot be applied to railroad employees consistent with the Supremacy Clause. We therefore do not reach the railroads' arguments about the dormant Commerce Clause and ERISA preemption.

**AFFIRMED.**